**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARISEL HERNANDEZ RIVERA,** | |
| Plaintiff, | Civil Action No. 16-1610 (ES) |
| v. | OPINION |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Marisel Hernandez Rivera ("Plaintiff") seeking review of Administrative Law Judge Leonard Olarsch's ("ALJ" or "ALJ Olarsch") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), respectively. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. BACKGROUND

On March 6, 2008, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI, due to scoliosis and "nerve damage in [her] back," (D.E. No. 5, Administrative Record

("Tr.") at 75-78, 185-92, 221), alleging disability beginning December 31, 2004 (*id.* at 185, 188).[1] The claims were initially denied on July 8, 2008 (*id.* at 79-81) and again upon reconsideration on October 23, 2008 (*id.* at 89-94). Plaintiff subsequently filed a request on December 18, 2008, for a hearing in front of an Administrative Law Judge. (*Id.* at 95-96). Plaintiff's request was granted, and she appeared and testified at a hearing before ALJ Michal L. Lissek ("ALJ Lissek") on March 11, 2010 (*id.* at 117, 129), then again at a supplemental hearing before the same judge on August 25, 2010, in Newark, New Jersey (*id.* at 15, 28, 147, 159). A vocational expert also testified at the supplemental hearing. (*Id.*).

On October 29, 2010, ALJ Lissek denied Plaintiff's application, stating that she considered treatment notes, objective studies, and opinion evidence to conclude that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (*Id.* at 15-22). On December 30, 2010, Plaintiff requested an Appeals Council review (*id.* at 8), which was denied on July 24, 2012 (*id.* at 1-5).

Subsequently, on October 27, 2015, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court before the Honorable Susan D. Wigenton, United States District Judge for the District of New Jersey. *See Rivera v. Comm'r of Soc. Sec.*, No. 12-6049, 2013 WL 4431345 (D.N.J. Aug. 14, 2013). Judge Wigenton reversed the Commissioner's decision and remanded the case for further proceedings. *Id.* at *1, *9. Judge Wigenton found that ALJ Lissek had failed to provide sufficient analysis for her conclusions at steps three and five of the five-step sequential analysis, pursuant to 20 C.F.R. § 416.920, for determining whether a plaintiff is disabled. *Id.* at *6-8. Specifically, Judge Wigenton determined that at step three, ALJ Lissek's

---

[1] Plaintiff's earnings record showed that Plaintiff acquired sufficient quarters of coverage to remain insured through June 30, 2006; therefore, Plaintiff bears the burden of establishing disability on or before that date to be entitled to a period of disability and disability insurance benefits. (*Id.* at 15-16, 792-93).

conclusion that "Plaintiff did not have impairments that matched or were equivalent to a listed impairment" did not include "any analysis or comparison to any listed impairments," but rather, was "a single conclusory statement." *Id.* at *5-6. Next, Judge Wigenton found that ALJ Lissek failed to properly determine the Plaintiff's residual functional capacity ("RFC") between steps three and four because ALJ Lissek did not explain whether she considered Plaintiff's subjective complaints. *Id.* at *6-7. Lastly, Judge Wigenton found that at step five, ALJ Lissek's acceptance of the vocational expert's conclusion that "an individual with Plaintiff's limitations could find work as a final assembler, ampoule sealer, and as a table worker assuming that she could engage in frequent handling or fingering," was improper because ALJ Lissek failed to reconcile that conclusion with contradictory earlier findings. *Id.* at *8. Judge Wigenton noted that, according to the record, Plaintiff's condition makes it difficult for her to stand and sit for extended periods or engage in "frequent" handling; however, ALJ Lissek did not provide "clarity [or] analysis" regarding her acceptance of the vocational expert's seemingly inconsistent conclusion. *Id.* Accordingly, Judge Wigenton ordered that "ALJ Lissek provide additional details and analysis regarding" the aforementioned deficiencies. *Id.* at *6.

On remand, a second ALJ—ALJ Olarsch—held an administrative hearing on September 4, 2014, at which Plaintiff's counsel stated that Plaintiff waived her right to appear, and a vocational expert testified. (Tr. at 795-805). On October 16, 2014, ALJ Olarsch issued a decision finding Plaintiff not disabled.[2] (*Id.* at 15-22). Plaintiff submitted exceptions to the ALJ's decision on November 18, 2014. (*Id.* at 769-70).

Then, on November 24, 2015, the Appeals Council notified Plaintiff that it would assume jurisdiction over the case pursuant to 20 C.F.R. §§ 404.984(b)(3), 416.1484(b)(3). (*Id.* at 757).

---

[2] ALJ Olarsch's decision is discussed in detail *infra* Part III.

On January 19, 2016, the Appeals Council issued a "Partially Favorable Decision" (i) affirming and adopting each of ALJ Olarsch's findings; (ii) concluding that ALJ Olarsch's decision complied with the District Court's remand order; and (iii) awarding Plaintiff SSI benefits beginning October 16, 2014. (*Id.* at 757-59). The Appeals Council awarded plaintiff SSI benefits because, as of October 16, 2014, Plaintiff was less than one month away from her forty-fifth birthday, and thus "less than one month away from entering a new age category under Medical-Vocational Rule 201.17." (*Id.* at 758). As the Appeals Council explained, "[t]he applicable rule for a person of the claimant's age, education, work experience, and residual functional capacity would then be Rule 201.17, which directs a decision of disabled." (*Id.*).[3]

Plaintiff then filed this action seeking review of ALJ Olarsch's decision. (D.E. No. 1). This Court received the administrative record on March 6, 2016. (D.E. No. 5). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 10, Brief in Support of Plaintiff filed on September 9, 2016 ("Pl. Mov. Br."); D.E. No. 11, Defendant's Brief Pursuant to Local Civil Rule 9.1 filed on October 13, 2016 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II. LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for DIB under Title II and SSI under Title XVI of the Act, a claimant must establish disability as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[3] The Appeals Council also explained that the applicable regulations are not to be applied mechanically. (*Id.*). So, "if a claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a decision that [the claimant] is disabled," the Appeals Council can award benefits prematurely if doing so would be appropriate in light of the other factors in the case. (*Id.*).

4

which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A). A claimant's physical or mental impairment(s) must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that a claimant is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on a claimant to prove steps one, two and four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[4] Because step three involves a conclusive presumption based on the listings, neither party bears the burden of proof. *Sykes v. Apfel*, 228 F.3d 259, 263 n.2 (3d Cir. 2000). At step five, the burden shifts to the Commissioner. *See Bowen*, 482 U.S. at 146 n.5.

***Step One.*** At step one, a claimant must demonstrate no engagement in any substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). SGA is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If a claimant engages in SGA, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id.* § 404.1520(b). If a claimant demonstrates no engagement in any SGA, the analysis proceeds to the second step.

***Step Two.*** At step two, a claimant must demonstrate a "severe" medically determinable impairment or the combination of impairments. *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. *Id.* § 404.1520(c). Slight abnormalities or minimal effects on a claimant's ability to work do not satisfy

---

[4] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, an ALJ must assess the medical evidence and determine whether a claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" ("Listing") in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). Upon a finding that a claimant meets or medically equals a Listing, that claimant is presumed to be disabled and is automatically entitled to benefits. 20 C.F.R. § 416.920(d); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where a treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright

only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

***Step Four.*** If a claimant is not found to be disabled at step three, the analysis continues to step four, in which an ALJ determines whether a claimant has the RFC to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant lacks the RFC to perform her past relevant, the analysis proceeds. *See id.* § 416.920.

***Step Five.*** In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that a claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

**B. Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this

Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III. ALJ OLARSCH'S DECISION

At step one of the analysis, ALJ Olarsch determined that Plaintiff had not engaged in SGA since December 31, 2004—the alleged onset date. (Tr. at 781).

At step two, the ALJ determined that Plaintiff suffered from multiple severe impairments: osteoarthritis, osteopenia, scoliosis, spondylosis and depression. (*Id.*). These impairments were found to cause significant limitation in the Plaintiff's ability to perform basic work activities. (*Id.*).

At step three, ALJ Olarsch found that Plaintiff did not have an "impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*). ALJ Olarsch stated that in reaching this conclusion, he specifically considered Listing 1.00. (*Id.*). ALJ Olarsch also found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04. (*Id.*). In making this finding, ALJ Olarsch stated that he considered whether Plaintiff satisfied "paragraph B" criteria—whether Plaintiff experienced (i) marked restrictions of activities of daily

living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration. (*Id.*). In activities of daily living, ALJ Olarsch found that Plaintiff had mild restriction. (*Id.*). In social functioning, ALJ Olarsch found that Plaintiff had mild difficulties. (*Id.*). With regard to concentration, persistence or pace, ALJ Olarsch found that Plaintiff had moderate difficulties. (*Id.*). Lastly, the ALJ found that Plaintiff experienced no episodes of decompensation which had been of extended duration. (*Id*. at 782). ALJ Olarsch also considered whether the "paragraph C" criteria were satisfied, but concluded that the evidence failed to establish the presence of "paragraph C" criteria. (*Id.*).

At step four, ALJ Olarsch determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except for the following limitations: Plaintiff could (i) stand and walk up to two hours and sit up to six hours; (ii) lift and carry up to ten pounds; (iii) occasionally do all postural activities except climbing ladders and scaffolding; (iv) perform work involving frequent fine fingering and gross handling; and (v) perform simple, routine, repetitive unskilled tasks. (*Id.*). In making this finding, ALJ Olarsch considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (*Id.*). ALJ Olarsch also considered Plaintiff's testimony at all hearings. (*Id.* at 785). ALJ Olarsch concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. (*Id.* at 782-83).

At step five, ALJ Olarsch concluded that, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including compact assembler, preparer, and table worker. (*Id.* at 786).

Accordingly, ALJ Olarsch found that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits. (*Id.* at 787).

## IV. DISCUSSION

On appeal, Plaintiff asserts that "substantial evidence exists in the administrative record to support a finding of disability." (Pl. Mov. Br. at 1). Plaintiff also asserts that ALJ Olarsch's decision is not based on substantial evidence. (*Id.* at 10). Plaintiff appeals ALJ Olarsch's determinations at step three, between steps three and four, and step five. (*Id.* at 9-28). Specifically, Plaintiff contends that (i) ALJ Olarsch's step-three analysis was inadequate (*id.* at 25); (ii) ALJ Olarsch failed to provide evidence for rejecting Plaintiff's subjective complaints (*id.*); and (iii) ALJ Olarsch failed to provide evidence to support the RFC for six hours of sitting and frequent fine fingering and gross handling (*id.* at 29).

Plaintiff asks the Court to reverse ALJ Olarsch's decision and order the payment of benefits. (*Id.* at 10). Alternatively, Plaintiff asks the Court to remand this case to the Commissioner for a new hearing and a new decision. (*Id.*). As set forth below, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal.

### A. ALJ Olarsch's Determination that Plaintiff's Impairments Do Not Meet the Severity of Listed Impairments Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's step-three analysis is insufficient because he mentions only a general listing—Listing 1.00—in his discussion of Plaintiff's physical impairments. (Pl. Mov. Br. at 25). Further, Plaintiff claims that ALJ Olarsch's conclusion consisted of "nebulous and non-evidentiary conclusory statements" (*id.* at 11) that "merely repeat[ed]" the "18 word version" of

ALJ Lissek's analysis previously rejected by Judge Wigenton (*id.* at 25; *see Rivera*, 2013 WL 4431345, at *6).[5]

Defendant counters that ALJ Olarsch explicitly considered Listings 1.00 and 12.04. (Def. Opp. Br. at 9). Defendant argues that ALJ Olarsch's identification of the relevant Listings and thorough review of the medical evidence passes judicial muster. (*Id.* at 10). Defendant also argues that Plaintiff did not specify which listings ALJ Olarsch should have compared with her impairments and therefore waived her argument that the ALJ's step-three analysis was insufficient. (*Id.* at 10). Finally, Defendant argues that Plaintiff did not support, with medical evidence, her claim that she met or equaled the specific requirements of any listing. (*Id.* at 11).

At step three, an ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). An ALJ must explain their reasoning for why the medical evidence does or does not meet the requirements of a Listing. *Burnett*, 220 F.3d at 119-20. An ALJ is not required to use particular language or adhere to a particular format as long as an ALJ's decision, read as a whole, illustrates sufficient development of the record and explanation of findings to permit meaningful review. *Jones*, 364 F.3d at 505. An ALJ's failure to discuss specific listings is not a reversible error if that ALJ analyzed all the probative evidence and explained their decision sufficiently to permit meaningful judicial review. *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 122 (3d Cir. 2008); *see Lopez v. Comm'r of Soc. Sec.*, 2012 WL 3262827, at *10 (D.N.J. 2012) (holding that ALJ's reference to listing section as a whole is sufficient). An ALJ's decision is judicially reviewable if that decision clearly analyzes and

---

[5] Plaintiff notes that Judge Wigenton's opinion identified three errors to be addressed on remand. The first two (relating to ALJ Lissek's RFC determination) are addressed *infra* Part IV, Section C. For the third error (regarding ALJ Lissek's step-three analysis), Plaintiff claims that "the frank and unmistakable findings of [Judge Wigenton] were ignored with impunity by [ALJ Olarsch]." (Pl. Mov. Br. at 22).

11

evaluates the relevant medical evidence as it relates to the listing requirements. *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008); *see also Domkos v. Colvin*, No. 15-2660, 2016 WL 1732380, at *4 (noting that an analysis of medical records in step four is sufficient for step three). An ALJ is not required to make reference to every relevant treatment note in their evaluation of medical evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). A broad conclusion followed by a searching review of the medical evidence is sufficient to permit judicial review. *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008).

The Court finds that ALJ Olarsch considered sufficient evidence in concluding that Plaintiff's impairments, physical or mental, did not meet or medically equal any listed impairments. ALJ Olarsch's reliance on a general listing of physical impairments—Listing 1.00— is sufficient for meaningful judicial review. *See Lopez*, 2012 WL 3262827, at *10. First, ALJ Olarsch is not required in a step-three analysis to specify any listing. *Lopez*, 270 F. App'x at 122. Second, Listing 1.00 is a general category of musculoskeletal system disorders. (20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 1.04). Because Plaintiff's claims of osteoarthritis, osteopenia, scoliosis and spondylosis (wear and tear of spinal discs) (Tr. at 781) are all musculoskeletal system disorders, ALJ Olarsch considering Listing 1.00 was relevant and allows for meaningful judicial review. *See Jones*, 364 F.3d at 505.

ALJ Olarsch's analysis of medical evidence in his step-four determination provides sufficient support for his step-three conclusion that Plaintiff's impairments failed to meet or equal any listings. *See Domkos v. Colvin*, 2016 WL 1732380, at *4. ALJ Olarsch noted that Plaintiff's May 12, 2010 x-ray of her foot and ankle showed no fracture, dislocation, or joint effusion. (Tr. at 785). ALJ Olarsch also mentioned clinical notes from June 1, 2010, which stated that Plaintiff had deformation and tenderness on the DIP joints of both hands, but that there was no evidence of

clubbing, cyanosis, or edema. (*Id.*). Finally, ALJ Olarsch indicated that Plaintiff received rheumatoid-factor testing and that her results were within normal limits. (*Id.*). ALJ Olarsch concluded that, although Plaintiff was diagnosed with arthritis, she had no functional limitations or restrictions with her hands because, at a consultative examination, she was able to fully extend her hands, make fists, oppose her fingers, separate papers, and lift a pin off a table. (*Id.*). Similarly, ALJ Olarsch acknowledged that Plaintiff's osteopenia, but noted that Plaintiff had normal full-range of motion of all joints and no focal deficits. (*Id.*). Hence, because ALJ Olarsch specifically considered Listing 1.00 and analyzed relevant medical evidence to assess Plaintiff's claims, ALJ Olarsch's conclusion included sufficient explanation of his findings to permit meaningful review. *See Jones*, 364 F.3d at 505.

Regarding Plaintiff's claims of mental impairment, ALJ Olarsch concluded that the severity of Plaintiff's mental impairment "d[id] not meet or medically equal the criteria of [L]isting 12.04." (Tr. at 781). ALJ Olarsch supported this conclusion by outlining the criteria of Listing 12.04 Paragraph B criteria, and concluded that Plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and that the record did not indicate that Plaintiff had experienced any periods of decompensation, which have been of extended duration. (*Id.* at 781-82). ALJ Olarsch indicated that in order to satisfy the Paragraph B criteria, Plaintiff's mental impairments must cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (*Id.* at 782). Because ALJ Olarsch indicated which specific listing he compared against Plaintiff's limitations and stated the severity of Plaintiff's mental limitations, ALJ Olarsch's conclusion provided a sufficient explanation of his analysis to permit judicial review. *See Jones*, 364 F.3d at 505.

Moreover, the Court notes that Plaintiff has not specified which Listing ALJ Olarsch should have applied, nor has she pointed to any medical evidence ignored by ALJ Olarsch that would show that her impairments medically equaled one of the listings. *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007). Consequently, Plaintiff has failed to meet her burden of showing that ALJ Olarsch's alleged error is harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Accordingly, because the Court gives significant deference to the Commissioner's determinations, the Court finds that ALJ Olarsch's determination that Plaintiff failed to meet or equal any Listing is supported by substantial evidence.

### B. ALJ Olarsch Properly Considered Plaintiff's Subjective Complaints

Plaintiff generally argues that ALJ Olarsch failed to support his rejection of Plaintiff's subjective complaints of pain. (*See* Pl. Mov. Br. at 25). Plaintiff claims that she suffers from chronic back pain and myofascial pain syndrome due to a collection of orthopedic impairments. (*Id.* at 28). Specifically, Plaintiff argues that she cannot work because she has arthritis in her shoulders and hands, and cannot sit for a prolonged period because of pain in her hips. (*Id.* at 13-14). Plaintiff notes that Judge Wigenton questioned ALJ Lissek's conclusion that Plaintiff could sit for up to six hours per day and perform frequent fingering because ALJ Lissek "improperly dismissed [Plaintiff's subjective] complaints which seemed to be supported by . . . medical findings." (*Id.* at 14).[6] Plaintiff argues that ALJ Olarsch's decision is a "virtual duplicate recitation of the same evidence in the same order," which "offers no reason for finding that [P]laintiff's 'symptoms' are not entirely credible." (*Id.* at 17). Defendant counters that ALJ Olarsch appropriately considered Plaintiff's testimony. (Def. Opp. Br. at 16). And Defendant maintains

---

[6] "[B]ased on ALJ Lissek's decision, it is unclear whether she appropriately considered Plaintiff's testimony. Accordingly, ALJ Lissek must properly consider Plaintiff's subjective complaints even if ultimately finding them to be not credible. As such, on remand, it is necessary for the ALJ to provide further analysis at step four that would permit a meaningful review by this Court." *Rivera*, 2013 WL 4431345, at *7.

14

that ALJ Olarsch's statement that he considered Plaintiff's subjective complaints, as well as ALJ Olarsch's discussion of the evidence pertaining to Plaintiff's impairment, were sufficient. (*Id.* at 17).

A claimant's subjective complaints must be given serious consideration but must also be supported by medical evidence. *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010). An ALJ may reject a claimant's subjective complaints when the ALJ "specif[ies] his reasons for rejecting the[] claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990). An ALJ has discretion to evaluate a claimant's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009).

The Court finds that ALJ Olarsch properly considered Plaintiff's subjective complaints of chronic back pain and myofascial pain syndrome, and that ALJ Olarsch's determination is supported by substantial evidence. ALJ Olarsch concluded that Plaintiff's complaints concerning the "intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. at 783). In reaching this conclusion, ALJ Olarsch stated that he considered all the claimant's allegations in her testimony at all hearings. (*Id.* at 785). ALJ Olarsch also noted Plaintiff's subjective complaints of back pain to physicians. (*Id.* at 783). The ALJ had the discretion to render an independent judgment in light of the medical evidence as long as he specified his reasons for rejecting Plaintiff's subjective complaints and supported his conclusion with medical evidence in the record. *See Matullo*, 926 F.2d at 245. As further explained below, ALJ Olarsch specified his reasons for rejecting Plaintiff's subjective complaints that she was unable to sit for up to six

hours and frequently perform fine manipulation and supported that conclusion with medical evidence. Hence, ALJ Olarsch properly considered Plaintiff's subjective complaints.

### C. ALJ Olarsch's Conclusion That Plaintiff Could Sit for Up to Six Hours and Frequently Perform Fine Manipulation Is Supported by Substantial Evidence

Plaintiff argues that ALJ Olarsch's finding that Plaintiff had an RFC for six hours of sitting and six hours of frequent fingering was without substantial evidence. (Pl. Mov. Br. at 29). Defendant responds that ALJ Olarsch appropriately found that there was no evidence that Plaintiff was limited to less than six hours of sitting and that ALJ Olarsch's discussion of Plaintiff's hand arthritis was legally sufficient. (Def. Opp. Br. at 15-16). As more fully set forth below, the Court finds that ALJ Olarsch's conclusion that Plaintiff could sit for up to six hours and frequently perform fine manipulation is supported by substantial evidence.

#### i. *Plaintiff Could Sit for Up to Six Hours*

Plaintiff argues that ALJ Olarsch did not provide any explanation for his conclusion that Plaintiff could sit for up to six hours. (Pl. Mov. Br. at 33). Plaintiff's statement is erroneous because ALJ Olarsch provided a paragraph at the end of his decision articulating both his conclusion and the evidence used to support his conclusion. (Tr. at 785). ALJ Olarsch addressed Plaintiff's subjective claim that she was unable to sit for any extended period of time, but concluded that there is no medical evidence in the record to support Plaintiff's claim. (*Id.*). Moreover, ALJ Olarsch acknowledged Plaintiff's diagnoses of osteopenia, but pointed to medical evidence indicating that Plaintiff's condition does not limit her ability to sit for less than six hours. (*Id.*). ALJ Olarsch supported that conclusion by referencing medical evidence that Plaintiff had normal full range of motion of all joints, that Plaintiff's muscle strength was 5/5 in both lower extremities, that Plaintiff's neurological examinations were normal, and that Plaintiff had no focal

deficits. (*Id.* at 783-85). Hence, ALJ Olarsch's conclusion that Plaintiff could sit for up to six hours is supported by substantial evidence.[7]

### ii. *Plaintiff Could Frequently Perform Fine Manipulation*

Plaintiff similarly argues that ALJ Olarsch did not provide any explanation for his conclusion that Plaintiff could frequently perform fine manipulation. (Pl. Mov. Br. at 33). Plaintiff's statement is similarly erroneous because ALJ Olarsch provided a paragraph at the end of his decision articulating his conclusion and supporting evidence. (Tr. at 785). ALJ Olarsch acknowledged that Plaintiff was diagnosed with arthritis in her hands. (*Id.*). Yet, ALJ Olarsch pointed to medical evidence that Plaintiff was able to (i) fully extend her hands, make fists, and oppose her fingers; (ii) separate papers and lift a pin off a table and put the pin back down; and (iii) ascend and descend an examination table independently and remove and put on her shoes independently. (*Id.*). ALJ Olarsch also considered medical evidence that Plaintiff's muscle strength and tone in her extremities were normal. (*Id.*). Finally, ALJ Olarsch noted that Plaintiff had testified before ALJ Lissek that she had worked in 2007 cooking and cleaning three times a week, and that this testimony supported a conclusion that Plaintiff was able to "perform fine fingering and gross handling without limitation." (*Id.*). Therefore, ALJ Olarsch's conclusion that Plaintiff could frequently perform fine manipulation is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[7] Plaintiff claims that an ALJ must not "simply recite the evidence and then announce a finding. There must be interplay between the two." (Pl. Mov. Br. at 30). Here, ALJ Olarsch first provided a survey of the medical evidence. (Tr. at 782-85). ALJ Olarsch then stated his conclusion, acknowledged evidence that Plaintiff had osteopenia and then provided evidence that supported his conclusion. (*Id.* at 785).